## CARRULLO v. UNITED STATES.
### No. 14145.

United States Court of Appeals
Eighth Circuit.
Oct. 31, 1950.

Lewis F. Randolph, St. Joseph, Mo., and Thomas C. Swanson, Kansas City, Mo. (James Daleo, Kansas City, Mo., was with them on the brief), for appellant.

Sam M. Wear, United States Attorney, and Hugh A. Miner, Assistant United States Attorney, Kansas City, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

Thomas Carrullo appeals from a judgment of conviction and sentence to ten years imprisonment imposed upon him pursuant to a jury verdict finding him guilty upon six counts of an indictment each of which charged him with unlawfully possessing or with unlawfully passing a described counterfeited security of the United States, to wit, a ten dollar Federal Reserve Note, in violation of Section 472, New Title 18 U.S.C.A. Three of the counterfeits were described.

He contends for reversal (1) that the court erred in admitting in evidence over his objection certain counterfeit ten dollar bills which were not mentioned in the indictment and (2) that the evidence is insufficient to sustain the verdict and judgment.

(1) The evidence introduced by the government tended to show that the three counterfeit ten dollar bills described and referred to in the indictment were alike and bore marks which identified them as being part of a large emission of like counterfeit ten dollars bills bearing the same serial number K53375351E that were passed all over the United States. One of them had been sent to the Bureau of Engraving where it was processed by testing the ink and the paper and giving it a thorough scrutinization. There was no evidence as to the methods that had been followed or the circumstances or the environments in which they had generally been passed throughout the United States, but the prosecution introduced evidence tending to show that altogether twelve of the counterfeits were passed at three several road-

houses of about the same general character and not far from each other in the outskirts of St. Joseph, Missouri, on Sunday night of January 21-22, 1950, under generally similar circumstances. All the counterfeit ten dollar bills passed within the small area were counterparts of each other and they were all tendered and taken for drinks at the several places and within a short space of time. It was shown that the appellant and a companion visited and made purchases of drinks at each of the roadhouses where the counterfeits were taken in, on the Sunday night in question.

There was also direct evidence that on that Sunday night the appellant and a bartender named George E. Danbury, hired a taxicab in the City of St. Joseph where they lived and made a tour together of these roadhouses on the outskirts of the city. At one of the places called the Red Clock, the appellant gave the owner Ruby Moore who waited on him and his companion the three counterfeit bills described in the indictment in payment for drinks served them. In each instance the price of the drinks was a small amount, less than a dollar, but the ten dollar bill was given and received and most of it returned as change. When the second bill was tendered by appellant, Ruby Moore complained and asked for some of the change the appellant had received from her for the first ten dollar bill, but appellant ignored her complaint, pressed the tender of the ten dollar bill and took the change. Likewise as to the third ten dollar bill, it was tendered, received by Ruby Moore and the change pocketed by appellant. Appellant's companion also upon ordering drinks in the same place on the same occasion tendered and received change from another of the same ten dollar counterfeit bills in the same manner. As she received the bills Ruby Moore handed them to her mother there in the room and the mother put them in her pocket and took them home. On the Monday afternoon following, Ruby Moore took them to the United States Post Office in St. Joseph to buy money orders and the Post Office employee recognized the counterfeit character of the bills as later established beyond doubt by the expert. The court received all of the counterfeit bills, including the three passed by appellant and the one passed by appellant's companion in his presence at the Red Clock and those passed at the other roadhouses where appellant had been, in evidence and the contention for appellant is that the court erred in receiving over his objection of incompetency those of the counterfeits which were not identified as having been possessed or passed by him.

But the arguments of appellant militate against the weight of the evidence of the passing of the other counterfeits, rather than against the relevance or competency of that evidence. Appellant's scienter and intent were of the gist of the charge on which he was being tried and the burden was on the government to show his guilty mind which could only be done in the face of his denial by circumstantial evidence. Certainly if direct evidence that appellant had himself passed the same kind of counterfeits at other places than at the Red Clock on the night in question had been adduced that would have added more proof of his guilty intent than did the testimony which the government offered. The prosecutor was frustrated in the attempt to make that proof by the refusal of inmates of the places other than the Red Clock to testify in accord with former statements made by them. Their testimony on the trial was limited to showing that counterfeits out of the same emission with the same serial number were tendered for drinks on the same night at the similar roadhouses outside the city, a short distance from each other, and that some similarity of opportunity for the passing of such counterfeits as was shown at the Red Clock existed at the other places. Then by other evidence it was proved that appellant and his companion were persent at the other places, carrying on in general about as they did at the Red Clock.

The appellant took the stand in his own behalf and asserted his innocence. He denied guilty knowledge or intent. His account of the actions of himself and his companion on the night in question would, if believed by the jury, have compelled the inference that his connection with any or all of the counterfeit bills shown by the

government was mere coincidence. That if he had one or more of them in his possession and if he and his companion gave some of them for drinks and took back change at the Red Clock and if identical counterfeit bills bearing the same serial number were passed for drinks at the other roadhouses where he was present, there was coincidence but there was no guilty knowledge or intent on his part.

But it was clearly competent for the government to negative innocent intent by proof of repetitions of instances, including anonymous instances, of the occurrence of similar things in similar places. It is the repetition of the instances that tends to negative innocence of intent and the probability of coincidence. Undoubtedly if appellant were shown to have been present in twenty such taverns where the same identically numbered counterfeits were similarly passed the probative effect and the confutation of coincidence would be more complete than with only the three instances. But the weight of the evidence and whether or not it overcomes a probability of coincidence and negatives innocent intent were for the jury. It was not within the function of the court to withhold from the jury the circumstances shown in respect to the passing of all the identical counterfeits and such connection as appellant had with the occurrences.

Appellant has argued that in order to justify the admission in evidence of the counterfeits passed at the roadhouses other than the Red Clock it was necessary to build presumption upon presumption and the cases are cited against that practice. But they have no application here. Here the government having adduced direct evidence that appellant had possessed and had passed the counterfeits described in the indictment at the Red Clock still had the burden to prove the alleged guilty intent beyond reasonable doubt. The courts have not and cannot establish any absolute formula to define exactly the particulars of circumstantial evidence that are or are not to be deemed competent to that end. In each case and as to each proffered circumstance it must be determined whether or not it tends in some substantial way either

of itself or as it may be connected with other shown circumstances, to be probative of the intent in issue. Here it is plain that the mere fact that appellant was present when his companion passed one of the counterfeits and was present at the other roadhouses where counterfeits were passed could not suffice of itself to convict him of the crime charged. But whether when all the circumstances shown were considered together his guilt was shown beyond reasonable doubt was for the jury. The court was not in error in receiving and submitting to the jury the circumstantial evidence in question.

(2) The evidence has been carefully considered in detail and it is concluded that the verdict is sustained by substantial and sufficient evidence.

The judgment is affirmed.