UNITED STATES of America,
Plaintiff-Appellee,

v.

Roger HILBURN, Defendant-Appellant.

No. 80–7064
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1980.

Ronald Windsor, Corinth, Miss., for defendant-appellant.

Janis M. Caplan, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Hilburn appeals his 18 U.S.C. § 401 criminal contempt conviction that arose from his failure to respond to five subpoenas requiring him to appear to testify before an Atlanta federal grand jury investigating a case in which he was believed to be a material witness. He argues errors as to conducting a criminal contempt hearing as opposed to a civil contempt one; as to the sufficiency of the evidence; and as to the satisfaction of the sentence imposed. After reviewing the trial transcript and the controlling jurisprudence, we find no merit in any of the assignments of error and consequently affirm.

*Context Facts*

In late 1978 and throughout 1979 a federal grand jury in the Northern District of Georgia was investigating a case in which defendant, a Carnes, Mississippi police officer, was believed to be a material witness. On five separate occasions the government served him with federal subpoenas. On each of these occasions for various reasons as outlined below, the defendant failed to comply with the subpoenas.

On December 16, 1978, the defendant was served with a federal subpoena ordering him to appear before the federal grand jury in Atlanta on January 9, 1979. On January 5, 1979, however, the defendant received a local subpoena requiring his attendance in Chancery Court in Mississippi on January 9, 1979. The defendant informed a special agent of the Federal Bureau of Investigation that he would not be able to attend the grand jury session in Atlanta, giving the special agent the impression that the local subpoena was received prior to the federal one. The defendant failed to appear in Atlanta on January 9, 1979.

On February 2, 1979, the defendant was served with a second federal subpoena, ordering him to appear before the Atlanta federal grand jury on February 13, 1979. On February 12, 1979, defendant checked himself into a hospital; consequently, he failed to appear in Atlanta as ordered on February 13, 1979.

The defendant was served with a third federal subpoena on March 31, 1979 that ordered him to appear before the Atlanta federal grand jury on May 8, 1979. The defendant worked on May 6, 7, 8, and 9, 1979 (as demonstrated by his relevant work

records), but failed to appear in Atlanta on May 8, 1979.

On October 4, 1979, the defendant was served with a fourth federal subpoena, directing his appearance before the federal grand jury in Atlanta on October 9, 1979. On the date of service, however, the defendant once again checked himself into a hospital. Therefore, he did not appear in Atlanta on October 9, 1979.

In November 1979, the United States of America moved for a court order to compel the defendant to appear before the grand jury in Atlanta on December 18, 1979. In paragraph 7 of its affidavit, the government alleged that

> Affiant believes that Mr. Hilburn will continue to ignore any forthcoming grand jury subpoenas unless he is ordered by the court to appear before the grand jury, and is subjected to this court's contempt power if he fails to appear.

Government Exhibit 6. On November 20, 1979, the United States District Court for the Northern District of Georgia issued an order directing the defendant to appear before the federal grand jury in Atlanta on December 18, 1979. *Id.*

On December 6, 1979, the defendant was served with a fifth federal subpoena, ordering him to appear before the grand jury in Atlanta on December 18, 1979. This fifth subpoena was accompanied by the district court's above described November 20, 1979 order and the government's affidavit in support of it, but the defendant again failed to appear as ordered. The defendant explained that he was home "in traction" at the time. However, he worked on December 17, and took "regular" days off on December 18 and 19. Additionally, he was seen dancing at the annual police Christmas party on the evening of December 19.

On December 26, 1979, upon application of the government pursuant to Federal Rule of Criminal Procedure 42(b), the district court scheduled a criminal contempt hearing. Following the hearing (or bench trial), the defendant was adjudged guilty of criminal contempt, and was orally sentenced to imprisonment for 180 days and a $2,000 fine. Two days later, however, on January 17, 1980, the district court modified its previous sentence and issued a judgment and commitment order sentencing the defendant exclusively to 180 days imprisonment without any fine. Record on Appeal, Volume I at 14.

On the next day, January 18, 1980, the defendant forwarded a cashier's check in the amount of $2,000 to the district court clerk. Defendant's Brief at 15. However, on January 21, 1980, the district court clerk returned the check to defendant's attorney with a letter explaining that the fine had been previously withdrawn by the court. Supplemental Record on Appeal at 1.

*Criminal Contempt*

█ The defendant first contends that the district court should have conducted a civil contempt hearing.

Assuming for present purposes that an appellate court can review the propriety of the initial choice of either civil or criminal contempt (as opposed to reviewing the sufficiency of the conviction once the choice has been made in the district court), we cannot conclude on these facts that the district court acted improperly by conducting a criminal contempt hearing designed to impose a punitive sentence. The defendant failed to appear five times in defiance of five grand jury subpoenas and a specially issued court order.

█ Since the purpose of this contempt proceeding was to vindicate the authority of the court by punishing the alleged wrongdoer, this proceeding is properly labelled as a criminal contempt proceeding.[1] *See Lewis v. S. S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976); 3 C. Wright, Federal Practice and Procedure § 704 (1979).

Of course, whether a proceeding is actually civil or criminal contempt has several important effects because that determination controls the type of notice required, the

---

1. On the other hand, this contempt proceeding would be civil in nature, if its purpose was remedial and was intended to coerce the defendant into doing what he was supposed to do.

applicable standard of proof, and the relevance of intent. *See Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980); Fed.R. Crim.P. 42(b).

We first note that the requirements of Federal Rule of Criminal Procedure 42(b) were satisfied in this case.[2] The other effects of this criminal contempt delineation (*i. e.*, the applicable standard of proof and the requisite intent) are more properly discussed under the sufficiency of the evidence assignment of error.

*Sufficiency of the Evidence*

■ Hilburn next asserts that the evidence is insufficient to support the criminal contempt judgment rendered by the court.

■ Our inquiry on this issue is controlled by well-settled legal principles. In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Vomero*, 567 F.2d 1315, 1316 (5th Cir. 1978). The standard for review of the sufficiency of the evidence to support the conviction is the same whether the evidence is direct or circumstantial. *See Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Palacios*, 556 F.2d 1359 (5th Cir. 1977); *United States v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

The district court properly found, as supported by the evidence, that the defendant was properly served with a subpoena to appear before a federal grand jury in Atlanta on January 9, February 13, May 8, October 9 and December 18, 1979 and that the defendant failed to appear on any of those dates. The district court gave Hilburn the benefit of the doubt as to the two dates on which he was hospitalized (February 13 and October 9) ostensibly to receive treatment for recurrent back problems, but found him guilty beyond a reasonable doubt for his failure to appear without just or legal excuse on January 9, May 8, and December 18, 1979.

The general power of a federal court to punish for criminal contempt is codified in 18 U.S.C. § 401, which authorizes a fine or imprisonment, in the court's discretion, for "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." The jurisprudence has held that this statute requires both a contemptuous act and a willful, contumacious, or reckless state of mind. *United States v. Lansky*, 496 F.2d 1063 (5th Cir. 1974); *In re Farquhar*, 492 F.2d 561, 564 (D.C.Cir.1973); *Sykes v. United States*, 444 F.2d 928, 930 (D.C.Cir. 1971).

In adjudging the defendant in criminal contempt, the district court in unequivocal terms found the requisite contumacious conduct.[3]

Additionally, viewing the evidence in the light most favorable to the government, as we must, there was sufficient evidence for the district court to conclude beyond a reasonable doubt that the defendant's consistent failures to appear before the federal grand jury were willful. Accepting as the district court did that Hilburn's hospitalizations were legitimate, we nevertheless find that the defendant demonstrated no valid reasons for his failure to appear on the other occasions.

On December 16, 1978, the defendant was served with the first federal subpoena ordering him to appear in Atlanta on January 9, 1979. On January 5, 1979, the defendant

---

**2.** Fed.R.Crim.P. 42(b) provides in relevant part:

The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

**3.** ". . . I have had my problems with police officers attending court in the State Court system. At least I thought I had problems until I saw this case. It's just inconceivable to me that a police officer could so flagrantly violate his responsibilities.

It's the worst situation I ever heard of, insofar as a police officer is concerned."
Record on Appeal, Volume II at 73.

received a local subpoena requiring his simultaneous presence in Mississippi Chancery Court on January 9, 1979. The defendant informed a special agent of the Federal Bureau of Investigation that he would not be able to attend the federal grand jury session, giving the special agent the mistaken impression that the defendant had received the local subpoena prior to the federal one. Although during his trial on the contempt charge the defendant testified that he could not recall which subpoena he had received first, he probably would have made (as the government argues) some arrangements to appear in Atlanta prior to January 5, 1979 if he had any intentions of appearing in Atlanta as ordered on January 9.

The defendant even more clearly did not show a valid reason for his failure to appear on May 8, and on December 18, 1979. On May 8 he was at work. On December 18, Hilburn took regular (as opposed to sick) time off and appeared the following day at a Christmas party where he was seen dancing, although he was allegedly at home "in traction." The requisite willfulness was further demonstrated by the testimony of one fellow police officer who testified that the defendant had told him at the party that he had already flown to Atlanta, testified, and flown back. At the same party, the defendant told another fellow officer that "when they come after me, I'll go." Record on Appeal, Volume II at 58.

*Sentence*

■ Apparently realizing that its original sentence of fine and imprisonment orally imposed on January 15, 1980, was illegal,[4] the district court on January 17, 1980 modified the sentence to provide for 180 days imprisonment only.

---

4. Under 18 U.S.C. § 401, a district court may punish criminal contempt by fine or imprisonment, but not by both. *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943); *United States v. Sampogne*, 533 F.2d 766, 767 (2d Cir. 1976); *Philipps v. United States*, 457 F.2d 1313 (8th Cir. 1972); *United States v. Temple*, 372 F.2d 795 (4th Cir. 1966).

5. All of the cases relied upon by the defendant are distinguishable because in each of them the fine had been satisfied in full (*i. e.*, tender of

On January 18, 1980, the defendant forwarded a cashier's check to the district court clerk in an attempt to pay the previously imposed fine. Thus, the defendant mailed in the fine *after* the modified sentence had been imposed. Upon receipt of the defendant's check, the district court deputy clerk mailed a letter to defendant's attorney on June 21, 1980 informing him that the fine had been previously withdrawn by the court and accordingly the check was being returned.

The defendant's argument that his tender of the fine constitutes satisfaction of one alternative provision of the original sentence can not be sustained, since in this case the original sentence was modified on January 17, 1980, prior to the time the defendant attempted to pay the fine.[5] At the time the (unaccepted) payment of the fine was tendered through mailing it on January 18, the oral sentence of 180 days *and* a $2,000 fine had been modified by written judgment filed January 17, 1980. As modified, the formal sentence provided only for one hundred eighty days imprisonment (and for no fine). At the time, the district court retained jurisdiction to correct the illegal sentence, Federal Rule of Criminal Procedure Rule 35(a) or to reduce the sentence originally imposed, *Id* Rule 35(b). Since the sentence imposed with respect to the fine had not been executed, the *Bradley* rule (see footnote 4) did not bar imposition of the imprisonment sentence and deletion of the unexecuted fine. See: *United States v. Barnette*, 546 F.2d 187 (5th Cir. 1977).

■ The defendant argues alternatively that his alleged lack of notice of the modification of his sentence made that modification ineffective.[6] We need not decide

---

payment and acceptance) while the erroneous sentences imposing both fines and imprisonment were still in effect. *United States v. Di Girlomo*, 548 F.2d 252, 254 (8th Cir. 1977); *United States ex rel. Kanawha Coal Operators Ass'n v. Miller*, 540 F.2d 1213, 1214 (4th Cir. 1976); *United States v. Sampogne, supra*.

6. The record does not indicate that the defendant was officially notified of the sentence reduction at the time it was entered. However, Federal Rule of Criminal Procedure 43 specifi-

whether a defendant's alleged lack of notice of the modification (reduction) of his sentence would make that reduction ineffective; for, in the case before us, at the time of the modification of the unexecuted sentence the district court was still empowered to reduce the illegal sentence and thus entitled to return to the defendant, unaccepted, his check (both tendered and received subsequent to the modification), with notice that the fine had been withdrawn.

■ "The Constitution does not require that sentencing should be a game in which a wrong move by a judge means immunity for the prisoner." *Bozza v. United States,* 330 U.S. 160, 166–167, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947). Here the district court correctly realized that when a sentence imposed by it does not conform to the applicable penalty statute, it has a duty to correct the sentence. *United States v. Allen,* 588 F.2d 183, 185 (5th Cir. 1979).

*Conclusion*

Having considered the arguments raised by the defendant, we conclude that there was no reversible error. The judgment of the district court is AFFIRMED.

---

cally provides that the defendant need not be present at a reduction of sentence entered pursuant to Federal Rule of Criminal Procedure 35.

*E. g., Oeth v. United States,* 390 F.2d 609 (5th Cir. 1968).