**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roger William RICE and James Gregory Williford, Defendants-Appellants.**

No. 80–1806.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 4, 1981.

Rehearings Denied Sept. 22, 1981.

Ward Casey, Fort Worth, Tex., for Rice.

Michael F. Lynch, Austin, Tex., for Williford.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Defendants, Roger William Rice and James Gregory Williford, each appeal their convictions for two counts of possessing and one count of conspiring to pass, utter, and possess counterfeit obligations of the United States with intent to defraud in violation of 18 U.S.C. §§ 371 and 472. In addition, Rice challenges his convictions for one count of passing and uttering a counterfeit $20 Federal Reserve Note. Williford charges (i) his arrest was illegal, making the search of his person improper, (ii) insufficient evidence was presented for a submission of the case to the jury on the issue of guilt, and (iii) District Court erred in refusing to suppress evidence of statements made both before and after his arrest. Joining Williford in these contentions, Rice also argues (iv) his in-court identification by one of the witnesses was so tainted as to render it unreliable, and (v) District Court improperly excluded evidence on the basis the proper predicate for admission was not laid. Finding the contentions of both defendants without merit, we affirm their convictions.

### Fake Bills And False Names

Reviewing the evidence in a light most favorable to sustaining the verdict, the facts show Rice, Williford, and a third unidentified white male entered the Skillern's Drug Store in San Marcos, Texas, at approximately 7:00 p. m. on February 14, 1980. Williford and the unidentified man went to the magazine rack while Rice went to the counter and asked the sales clerk for a roll of film costing about three dollars. Rice gave the clerk a counterfeit twenty dollar Federal Reserve Note. The clerk noticed the bill appeared unusual, but rather than possibly embarrassing a customer needlessly, she completed the transaction by giving Rice the proper change for his purchase. Rice then left the store. Williford and the other man followed immediately thereafter and joined Rice in the mall in front of Skillern's.

After the trio was gone, the clerk reexamined the bill more closely. Concluding

the bill was indeed counterfeit, she notified the manager who concurred in her opinion. They called the police and proceeded out into the shopping mall to see if the suspects could be spotted. Within minutes, the clerk was able to point out Rice, Williford, and the third man to the manager as the three men were headed for the parking lot. She subsequently returned to the store.

At that point, the unidentified third man disappeared, never to be seen again. About the same time, a San Marcos police officer arrived. The manager pointed out Rice and Williford to him as two of the men who had come into the store. The officer directed Rice and Williford over to his car and asked them for identification. They both claimed not to have any, being evasive and reluctant to give their names. Only after repeated questioning, Rice said he was David Rice.

While talking, the officer noticed Williford was carrying a wallet. After the officer asked if he had a driver's license in it, Williford produced one in the name of Lester McDowell.

The officer asked both men their date of birth. Rice responded with a birth date in 1959. The officer became suspicious as this date would have made Rice twenty-one years old, although he appeared to be at least twenty-five to thirty.

Once the officer obtained identification from Rice and Williford, the store manager pointed out Rice as the man who had passed the bill to the clerk. On examining this bill, the officer found it to be counterfeit.

Rice and Williford were then arrested and advised of their rights. As Williford was being handcuffed, he dropped his wallet. On picking it up and examining its contents, the officer found, along with some genuine cash, two other counterfeit $20 bills that resembled the one passed at Skillern's.

When Rice and Williford reached the police station, they were searched to provide an inventory of personal effects. Each was found to have two additional counterfeit bills. One counterfeit bill found in Rice's possession had the identical serial number as one found in Williford's possession.

Having been warned of their rights a second time, both Rice and Williford were questioned alternately by a Secret Service Agent. Both denied the presence of a third man at the mall. Rice told the Agent he was David Rice and he and Williford were hitchhiking to the Texas coast. He later admitted, however, he was really Roger William Rice and that he had failed to give his real identity as there were some outstanding warrants on him. When it was discovered the picture on the driver's license was not that of Williford, he admitted he was not Lester McDowell, also claiming he had not given his real identity as there were outstanding warrants on him. Upon each stating he would not discuss the counterfeiting matter, questioning ceased.

After the questioning, the Skillern's clerk observed Rice and Williford through a window in the booking area of the police station where they were being arraigned by the local magistrate. She identified them as the men who had been in the store, pointing out Rice as the man who had passed the bill.

Rice and Williford subsequently were charged, jointly tried, and convicted, from which they bring this appeal.

*Intentional Acts Equal Probable Cause*

Both Rice and Williford challenge the validity of their arrests for lack of probable cause. They contend because their arrests were not supported by probable cause, District Court erred in denying their pretrial and trial motions to suppress evidence seized from their persons. More specifically, Williford complains he was arrested and searched because of (i) his proximity or association with a person suspected of committing an illegal act and (ii) his less than cooperative attitude when the officer stopped and frisked him.

The Government argues in reviewing these contentions we are bound by application of Texas law which permits an officer to arrest without a warrant where he believes "upon the representation of a credible person, that a felony has been committed,

and that the offender is about to escape . . . ." Article 14.04, Tex.Code Crim.Pro. Ann. (Vernon's 1977); *Holt v. State*, 538 S.W.2d 125, 126–27 (Tex.Cr.App.1976). Under that standard, the Government contends in light in the totality of the evidence and the exigency of the circumstances, the officer was justified in determining sufficient probable cause existed to arrest both Rice and Williford. The Government consequently claims District Court was correct in upholding the actions of the officer.

■ Concluding the Government is correct in its general assertion the lawfulness of an arrest by state officers is determined by the law of the state where the arrest took place, we emphasize the application of state law is subject to federal constitutional standards. *United States v. Fossler*, 597 F.2d 478, 482 n.3 (5th Cir. 1979). *See also Ker v. California*, 374 U.S. 23, 37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726, 740 (1963); *United States v. Lipscomb*, 435 F.2d 795, 798 (5th Cir. 1970), *cert. denied*, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). Thus, we also must assure ourselves a reasonable man, standing in the shoes of the arresting officer, could have believed in light of the facts and circumstances an offense had been committed and that a particular defendant committed it. *United States v. Perez*, 526 F.2d 859, 862 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976).

■ With respect to Rice, we have no doubt sufficient probable cause existed to support his arrest. Before he was placed under arrest he (i) failed to give proper identification on the officer's initial request, (ii) gave a birth date placing his age obviously too young for his appearance, (iii) passively resisted the officer during frisking, and (iv) was positively identified by the store manager as the one who had passed the bill which the officer independently concluded to be counterfeit.

■ Although Williford did not actively participate in passing the bill, but was merely with Rice, and it is common for members of the public to be frightened, become nervous, or even embarrassed when stopped by a police officer,[1] especially when they don't know his purpose, we conclude the facts of this case negate Williford's contentions regarding the lack of probable cause for his arrest. When viewed in totality, not a vacuum, we find the officer had before him information that (i) three men had passed a counterfeit bill at Skillern's Drug Store, (ii) Williford was with Rice, (iii) they both were reluctant to identify themselves on the officer's request, initially only giving their first names, (iv) both denied possessing any identification, (v) it was only on his specific notice of the wallet in Williford's pocket and repeated request for identification that Williford produced the driver's license which bore another name and picture, and (vi) the bill Rice was charged with passing was indeed counterfeit. While Williford's reliance on *United States v. Barber*, 557 F.2d 628, 632 (8th Cir. 1977), has some appeal, the facts of that case do not preclude a finding of probable cause here. As the Government pointed out in oral argument, Williford's action in seeking to (i) hide his true identity, (ii) evade giving even his last name, and (iii) avoid giving identification until the officer spotted his wallet, when combined with the other factors, establish the officer had probable cause to arrest him. Williford's intentional affirmative actions distinguish this case from *Barber* where the defendant was arrested after merely sitting in the car while his friend passed the counterfeit bill. Unlike *Barber*, Williford took independent actions which led the officer to believe he might be involved or at least had some knowledge of Rice's illegal activity. The Judge was entitled to conclude that his intentional actions to avoid identification were not attributed to nervousness, embarrassment, or fright at being stopped by the officer which would have negated the officer's concluding probable cause existed for Williford's arrest.

■ Because the officer definitely had probable cause to arrest Rice, and the two men were heading for the parking lot when

1. *See, e. g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

stopped, exigency of the circumstances in this case warranted Williford's, as well as Rice's, arrest. In reaching this conclusion, we emphasize a showing of probable cause requires much less evidence than a finding of guilt. *United States v. Agostino*, 608 F.2d 1035, 1037 (5th Cir. 1979) (*citing United States v. Beck*, 431 F.2d 536, 538 (5th Cir. 1970)). Probable cause must be judged not with the logic of cold steel, but with a common-sense view to the realities of everyday life. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

Since the arrests of both Rice and Williford were legal, being based on sufficient probable cause, the search of their persons which resulted in the finding of two additional counterfeit bills in the possession of each, was proper. As the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification. *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440 (1973); *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456, 461 (1973).

### *It All Adds Up*

Rice and Williford both challenge the sufficiency of evidence for their cases to have been submitted for its determination of their guilt. In particular, each argues the Government presented insufficient evidence to prove their unlawful intent. We review their charges in a light most favorable to the verdict, with all reasonable inferences and credibility choices made to support it. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); *United States v. Ocanas*, 628 F.2d 353, 360 (5th Cir. 1980); *United States v. Newman*, 628 F.2d 362, 366 (5th Cir. 1980).

In assessing the sufficiency of evidence for a case to be submitted to the jury, District Court must determine whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the existence of the essential elements of the crime charged. *United States v. Barrera*, 547 F.2d 1250, 1255 (5th Cir. 1977); *United States v. Haggins*, 545 F.2d 1009, 1011–1012 (5th Cir. 1977). The same standard is applied whether the evidence is direct or circumstantial. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Hilburn*, 625 F.2d 1177, 1180 (5th Cir. 1980); *United States v. Slone*, 601 F.2d 800, 803 (5th Cir. 1979).

To establish the substantive offenses charged here, the United States had to show Rice and Williford each passed or possessed counterfeit money and that they did so with intent to defraud. *United States v. Gonzalez*, 617 F.2d 104, 106 (5th Cir. 1980); *United States v. Sink*, 586 F.2d 1041, 1049 (5th Cir. 1978), *cert. denied*, 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). Although a defendant's knowledge the notes were counterfeit is necessary to establish the statutory requirement of intent, this guilty knowledge may be inferred from circumstantial evidence, and the surrounding circumstances may supply inferences of knowledge which adequately prove intent. *Slone*, 601 F.2d at 803; *Sink*, 586 F.2d at 1049. Among those acts from which guilty knowledge may be inferred is the use of larger counterfeit bills for small purchases rather than genuine change in the possession of the perpetrator, *Slone*, 601 F.2d at 803; *Carrullo v. United States* 184 F.2d 743, 745 (8th Cir. 1950), and furtive conduct by the defendant, *Gonzalez*, 617 F.2d at 106–07; *United States v. Forzano*, 190 F.2d 687, 688 (2d Cir. 1951).

In this case, Rice, while hitchhiking to the Texas coast, attempted to purchase a roll of film. Neither he nor Williford, however, possessed a camera at the time of their arrests. Both had sufficient money, in smaller denominations, to have purchased the roll of film without using the counterfeit $20. Each attempted to hide his true identity at the time he encountered the police officer. Counterfeit bills in each's possession were identical. The bills were such poor counterfeits that even an untrained eye could detect their bogus nature. Intent to possess and/or pass the counterfeit bills clearly could have been inferred.

With respect to the conspiracy, it only was incumbent on the Government to establish existence of an agreement by two or more persons to commit an offense against the United States and the doing of an overt act by one of the conspirators in furtherance of that conspiracy. *United States v. Gordon,* 580 F.2d 827, 834 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711. Direct proof of the agreement is not required; rather, its existence may be established by the acts and conduct of the conspirators themselves. *United States v. Cuesta,* 597 F.2d 903, 918 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). Although the essence of a conspiracy is the agreement, *United States v. Suarez,* 608 F.2d 584, 586 (5th Cir. 1979), *United States v. Conroy,* 589 F.2d 1258, 1269 (5th Cir.), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979), the Government also must establish each defendant knew of the conspiracy and with that knowledge, voluntarily joined it. *United States v. Rhodes,* 631 F.2d 43, 45 (5th Cir. 1980); *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir. 1980) (*en banc*); *United States v. Rodarte,* 596 F.2d 141, 145 (5th Cir. 1979).

On the conspiracy charge, the evidence established Rice and Williford were each in possession of two $20 bills from the same series of counterfeit notes. Both had been present when the bill was passed at Skillern's and each tried to hide his true identity. Moreover, they were traveling together, as each stated he was hitchhiking to the Texas coast. District Court properly submitted the issue to the jury.

### Voluntary Statements

As a final joint complaint, Rice and Williford contend their statements made both before and after the arrest should not have been admitted though District Court, after a pretrial hearing, found them to be voluntary. The challenged statements concern (i) each's identity, (ii) the presence of a third party at the mall which again was made after the arrest, and (iii) their hitchhiking to the Texas coast.

The statements made before the arrest on Rice and Williford's identity do not come within the scope of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* is inapplicable to non-custodial interrogations where, as here, what is involved is "on the scene questioning as to the facts surrounding the crime and other general questioning of citizens in the fact-finding process." 384 U.S. at 477, 86 S.Ct. at 1629, 16 L.Ed.2d at 725. *See United States v. Henry,* 604 F.2d 908, 915 (5th Cir. 1979); *United States v. Marks,* 603 F.2d 582, 584 (5th Cir. 1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980). As the officer had not talked to the store manager nor seen the bill when Rice and Williford were originally approached, he was not conducting a custodial search in violation of *Miranda,* since no probable cause existed at that point. *Id.; United States v. Micieli,* 594 F.2d 102, 105 (5th Cir. 1979).

Regarding the statements made after the arrest, it is clear they were made after Rice and Williford had received at least two warnings of their *Miranda* rights. Once warnings have been given, it is for the individual to indicate in any manner and at any time, prior to or during the questioning, that he wishes to remain silent. *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627, 16 L.Ed.2d at 723. Rice and Williford's exercise of their rights, however, did not render answers tendered before the privilege was invoked involuntary. *See Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). District Court properly admitted the statements.

### Tainted Identification?

Rice asserts the store clerk's in-court identification of him was tainted because she had previously identified him under unduly suggestive and unfair conditions. In determining whether in-court identifications were reliable, we must look to the totality of circumstances, considering such factors as (i) the witness' opportunity to view the criminal at the time of the crime, (ii) the witness' degree of attention,

(iii) accuracy of the witness' prior description of the criminal, (iv) the level of certainty demonstrated by the witness at confrontation, and (v) the length of time between the crime and confrontation. *United States v. Bazan*, 637 F.2d 363, 366 (5th Cir. 1981) (*citing Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972)).

■ When the offense was committed, the lighting was good and the store clerk had no difficulty in seeing Rice as she conducted the film purchase with him from across the store counter. She paid closer attention to him than usual once she realized the bill he handed her may be counterfeit. Within minutes after the offense was committed, the store clerk pointed out Rice to her manager as being involved in passing the counterfeit bill. She was able to identify Rice as the perpetrator again later that same evening. At no time did she exhibit any difficulty in making her identification of Rice.

■ Although "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup has been widely condemned," *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967), we recognize exigent circumstances such as the interest to be served by rapid crime solution may justify a one-on-one confrontation. *Frank v. Blackburn*, 605 F.2d 910, 912 (5th Cir. 1979). In light of the numerous factors supporting the reliability of the witness' identification, and the lack of evidence that the police acted improperly in utilizing this identification procedure, we conclude the in-court identification was not tainted.

### Evidence Essentially Before Jury

■ As a final contention in this appeal, Rice argues District Court erred in refusing to admit evidence of Fort Worth traffic warrants issued for a person of the same name. He asserts the warrants tended to refute the inference that the reason he gave a false name to the police officer was because of guilty knowledge that the bills he possessed and passed were counterfeit.

■ Admissibility of evidence is within the broad discretion of District Court. *United States v. Bibbs*, 564 F.2d 1165, 1168 (5th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *United States v. Linetsky*, 533 F.2d 192, 204 (5th Cir. 1976). In this case, Rice offered photocopies of warrants issued for someone with the same name. He failed to establish, however, they were issued for the same man. The exhibits were not identified or authenticated in any way. Consequently, any error in their omission was certainly harmless. *United States v. Sanfilippo*, 581 F.2d 1152, 1155 (5th Cir. 1978); *United States v. Ashley*, 555 F.2d 462, 465 (5th Cir. 1977). [We cannot conclude District Court abused its discretion.]

The judgments of conviction as to both Rice and Williford are affirmed.

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

I respectfully dissent.

Because I believe that the proceedings below were rife with error—any one of which mandates reversal—I am shocked by the majority's conclusion that appellants' convictions must be affirmed. First, I dissent from the majority's determination that sufficient evidence exists in this case. Under the heading "It All Adds Up," the majority has found the evidence sufficient to prove—beyond a reasonable doubt—that the defendants knew that money in their possession was counterfeit. In reaching this conclusion, however, the majority has not merely relied on the mathematical process of addition as its heading suggests, but has rather resorted to the process of multiplication in an effort to reach a sufficient product. Second, I dissent from the majority's conclusion that the trial court properly excluded evidence proffered by defendant Rice. Since I believe that an ample predicate was presented for admission of the evidence, I would find that the trial court's action constituted an abuse of discretion and reversible error. Finally, I dissent from the majority's finding that the police had probable cause to arrest defendant Wil-

liford. I would therefore hold that evidence seized in the search incident to this unlawful arrest was inadmissible.

## I. *SUFFICIENCY OF THE EVIDENCE*

Appellants claim that the evidence presented was insufficient to prove that they *knowingly* passed, possessed or conspired to pass and possess counterfeit money. Because a jury convicted appellants of the offenses charged, on review this court must consider the evidence in the light most favorable to the verdict and all credibility choices and inferences must be made in an effort to support the jury's decision. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)[1]; *United States v. Allison*, 616 F.2d 779, 784 (5th Cir.), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). As the majority has noted, the standard for reviewing sufficiency of the evidence is "whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the existence of the essential elements of the crime charged." *See* Majority Opinion, *supra*, p. 526. Stated in slightly different words, "the test is 'whether reasonable minds could have found the evidence inconsistent with every reasonable hypothesis of the defendant's innocence.'" *Allison, supra*, 616 F.2d at 784; *United States v. Slone*, 601 F.2d 800 (5th Cir. 1979); *United States v. Haggins*, 545 F.2d 1009 (5th Cir. 1977). Of course, before a defendant can be convicted, every element of the crime charged—including knowledge and intent, if applicable—must be proved beyond a reasonable doubt. *See Slone, supra.*

In the case at bar, the majority concludes that six bits of evidence give rise to an inference that defendants knew that money in their possession was counterfeit: (1) counterfeit bills were in fact possessed and/or passed by appellants; (2) the bills were poor counterfeits and looked bogus even to an untrained eye; (3) defendant Rice used a bill to purchase film, but neither he nor defendant Williford had a camera in his possession; (4) the counterfeit bills in each defendant's possession were identical; (5) instead of using a bill of smaller denomination, defendant Rice used a comparatively large bill ($20) to make a comparatively small ($3 or $4) purchase;[2] and (6) each defendant attempted to hide his true identity when first questioned by the police.[3] *See* Majority Opinion, *supra* p. 526. The majority fails to analyze these facts, but rather attempts to make its point by simply listing the facts, stating its conclusion and leaving us to our own devices to determine how the former compels the latter. We are not even given a glimpse of what must be the imaginative analysis which led the majority to conclude that "Intent to possess and/or pass counterfeit bills clearly could have been inferred." *See id.* Try as I might, I simply cannot agree with the conclusion that the six facts enumerated above could give rise to an inference—beyond a reasonable doubt—that the defendants knew that the money in their possession was counterfeit. Taken separately or together, these facts cannot exclude from the minds of reasonable jurors every reasonable hypothesis except that of guilt. *See Allison, supra.* Both the case law and common sense therefore mandate reversal.

First of all, the simple fact that the defendants actually passed or possessed counterfeit bills is insignificant with regard to the issue of knowledge. It is well-settled that knowledge that money is counterfeit cannot be inferred from possession or use of the money alone. *Slone, supra*, 601 F.2d at 803; *Haggins, supra*, 545 F.2d at 1013. Similarly, the fact that the bills were such

---

1. Unlike Alice's looking glass, the perspective provided by *Glasser* is designed to mirror reality. Hence, when examining the evidence "Through the Looking Glass[er]," the judge is *not transported into a fantasy world where all defendants are guilty.*

2. The drug store clerk testified that the price of the film was $2.99 plus tax. *See* Record at 46. However, the price tag on the film is in the amount of $3.99. *See* Defendant's Exhibit 4.

3. Since only defendant Rice used the $20 bill to purchase film, facts (3) and (5) *supra* are not relevant with regard to defendant Williford.

poor counterfeits that even an untrained eye could detect their bogus nature cannot be dispositive of intent. *See United States v. Alea*, 433 F.2d 948 (5th Cir. 1970) (counterfeit bill so bogus that 15 year-old boy could tell that it was false is not sufficient to infer guilty knowledge). Since currency is often passed before it is carefully examined, allowing an inference of knowledge to be drawn from the fact that a bill is obviously counterfeit can easily result in the inadvertent and unjust punishment of an innocent individual who was simply not observant. *See id.*

Moreover, it is simply indefensible to suggest that an inference of knowledge can be drawn from the fact that defendant Rice purchased a roll of film when neither he nor defendant Williford was carrying a camera. The majority apparently implies that the film was worthless to defendants and that their intent was therefore simply to pass the counterfeit bill and to obtain legitimate change from their purchase. But such an implication is indeed an unreasonable one. It simply states the obvious to say that oftentimes film is purchased for cameras not in the immediate possession of the purchaser. Rice could have been buying film for a camera possessed or owned by a friend. In fact, the camera may well have been carried around the neck of the third man who was with defendants in the drug store but who disappeared into the shopping mall during this incident. Furthermore, if defendant Rice was simply seeking to obtain change from his purchase, why would he buy something worthless? Why not purchase a $3 or $4 bottle of men's cologne or a 30¢ pack of gum, so as to have both the legitimate change and a useful product? If the film was worthless to Rice and he was seeking merely to receive change from what he knew was a counterfeit bill, why did he not dispose of the film soon after leaving the store? Why did he carry the "evidence" with him as he walked through the mall? The fact that Rice purchased film without a camera in his possession is totally irrelevant with regard to the question whether he knew currency in his possession to be counterfeit.

Likewise, the fact that the counterfeit bills in the possession of each defendant were identical implies nothing other than that the defendants obtained the bills at the same time and in the same place. It is indeed possible that they both *inadvertently* obtained the bills at the same time and in the same place. Defendants testified that they were travelling together at the time of their arrest and were therefore most likely in the same stores and banks where the bills might have been obtained. Indeed, it is entirely possible—and perhaps even probable—that both defendants withdrew comparatively large sums of cash for their travels from the same institution. The fact that defendants possessed identical counterfeit bills is irrelevant with regard to their knowledge.

In addition, while the use of large bills for small purchases can give rise to an inference of knowledge, *Slone, supra; Haggins, supra*, in each case where such an inference has previously been found to have been important with regard to the intent issue, the court noted that large counterfeit bills were *repeatedly* used to make small purchases while the change from the former purchases was not touched. *See, e. g., Ruiz v. United States*, 374 F.2d 619 (5th Cir. 1967); *Carrullo v. United States*, 184 F.2d 743 (8th Cir. 1950). Indeed, in *United States v. Alea, supra*, 433 F.2d at 948, this court held that although repeated use of large counterfeit bills instead of change from earlier purchases could give rise to an inference of knowledge, use of a single $10 bill to purchase $3 worth of gasoline was insufficient to support conviction. Similarly, in *Paz v. United States*, 387 F.2d 428 (5th Cir. 1967), this court reversed a counterfeiting conviction on the grounds that the requisite guilty knowledge was not shown in a case where a counterfeit $20 bill was used to purchase $2 worth of gasoline. Hence, the single use of a $20 bill to purchase $3 or $4 worth of film in the case at bar is clearly insufficient to give rise to an inference of guilty knowledge. No guilty inference should be drawn from a single innocent act which many people perform

every day—paying for a small purchase with a large bill.

Finally while "furtive conduct" may give rise to an inference of guilty knowledge, *see Slone, supra,* 601 F.2d at 803, the fact that appellants simply gave false names to the police officers does not permit such an inference.[4] Defendants attempted to explain their false self-identifications by noting that there were outstanding warrants for their arrests on other charges.[5] Certainly "a reasonably minded jury must entertain a reasonable doubt" that the false self-identifications were made because appellants knew that the bills were counterfeit. Indeed, anyone faced with a tension-filled, pressurized situation such as a confrontation with and arrest by the police might be at first tempted to give a false name or birth date whether guilty or innocent. "Furtive conduct" may indeed be evidence of guilty knowledge, but in the case at bar the existence of other possible and perhaps probable reasons for the false self-identifications precludes a finding that defendants knew that money in their possession was counterfeit.

Because I am convinced that reasonable minds could not have found the evidence "inconsistent with every reasonable hypothesis of the defendant's innocence," I believe that it is our duty to reverse the convictions of the two defendants. *See Allison, supra,* 616 F.2d at 784; *Slone, supra,* 601 F.2d at 802–04. Considering the facts of this case separately or added together, a number of reasonable scenarios must necessarily have created a reasonable doubt in the minds of reasonable jurors. For example, Rice and Williford could have both unknowingly received the counterfeit money from the same bank or store, could have failed to examine the money closely and could have given false names to the police because of the outstanding warrants for their arrests. Rice could have been purchasing film for a camera which a friend was holding for him and could have used a $20 bill for this comparatively small purchase simply because he needed or wanted bills of smaller denominations as a matter of convenience. In light of this possibility, the government did not prove—*beyond a reasonable doubt* —that the defendants knew that money in their possession was counterfeit. Under such circumstances, it is our constitutional duty to reverse defendants' convictions.

This court's recent opinions in *United States v. Haggins, supra,* and *United States v. Slone, supra,* support this conclusion in the case at bar. In *Haggins,* the court held that there was insufficient evidence to support the conviction of a defendant who purchased Jai-Alai gambling tickets with a counterfeit $20 bill. The court noted that a significant amount of legitimate currency was found in the defendant's possession and that the defendant made "only the mildest effort to escape." Moreover, the court found that since "probably the strongest evidence of guilty knowledge is an attempt to abandon counterfeit currency when detection is feared," *Haggins, supra,* 545 F.2d at 1013; *Ruiz, supra,* 374 F.2d at 620, the fact that the defendant did not attempt to

---

4. "Furtive conduct" more appropriately applies to attempts to hide counterfeit money, *see, e. g., United States v. Gonzalez,* 617 F.2d 104 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980), than to simply giving a false name to police officers. In *Gonzalez,* this court held that the defendant's action in stuffing counterfeit bills behind a cushion "with much effort" while handcuffed was sufficient to establish intent. On the other hand, in the case at bar, the fact that defendant Williford dropped his wallet while being handcuffed cannot give rise to an inference that he was attempting to dispose of it.

5. Evidence of outstanding warrants for defendant Williford's arrest was presented at trial. In addition, a United States Secret Service Agent testified that Williford explained his false self-identification as resulting from the outstanding warrants. *See, e. g.,* Record at 232–34.

Defendant Rice proffered copies of outstanding Fort Worth traffic warrants in his name, but the court refused to admit this evidence on the ground that the proper predicate had not been established. I would find that the trial court's refusal to admit this evidence was an abuse of discretion and reversible error. *See infra* pp. 532–533. Hence, I would hold that the jury should have been allowed to consider Rice's contention that he gave police a false name because he knew that there were outstanding warrants for his arrest.

destroy or abandon the counterfeit bill before he was arrested weighed in favor of finding that he did not possess the requisite guilty knowledge. The court concluded that the fact of possession combined with defendant's walking away when told that the bill was counterfeit was insufficient to support a finding—beyond a reasonable doubt—that defendant knew that the bill was bogus. *Id.* at 1011–13.

Similarly, in *Slone, supra,* this court found the evidence insufficient to support a counterfeiting conviction in a case where the evidence giving rise to an inference of guilty knowledge was (1) mere possession, (2) possession of a large amount of counterfeit money ($5,000 in $50 federal reserve notes) and (3) defendant's unusual conduct (to say the least!) in grabbing a piece of cake from his wife's purse where the counterfeit bills were found, and gobbling it down in front of a customs inspector who was questioning defendant upon his return from Columbia. The court noted that since the customs inspector had just asked defendant about food, it was "more logical" to conclude that defendant gobbled down the cake in a "contemptuous and immature" effort not to import food, rather than as an attempt to distract the official from the counterfeit money. *Id.* at 804. Moreover, while possession of a large amount of counterfeit money may give rise to an inference of guilty knowledge, the court held that on the facts of the case before it, "the possession of $5,000 in counterfeit notes, without more, does not create an inference of guilty knowledge." *Id.* at 805.

The facts of the case at bar present an even more compelling case for defendants. As in *Haggins* and *Slone,* there was no rapid series of passing counterfeit bills, there was no effort to destroy or abandon counterfeit money, there was no repeated use of large bills instead of change received from former transactions to pay for small purchases, and there was no evidence that the appellants knew that the bill had previously been refused because it was thought to have been bogus. *See Slone, supra,* 601 F.2d at 803–04; *Haggins, supra,* 545 F.2d at 1011–13. Indeed, in the case at bar, de-

fendants made no attempt to escape and simply possessed a comparatively small amount of counterfeit money together with larger amounts of legitimate currency. If any inference can be drawn from the evidence presented, it is that the defendants inadvertently possessed counterfeit money with no knowledge that it was bogus. The jury must necessarily have had a reasonable doubt as to whether defendants possessed the requisite guilty knowledge, and this court should therefore reverse the convictions of each defendant and remand so that judgments of acquittal may be entered.

## II. *RICE'S ARREST WARRANTS*

As noted above, *see supra* note 4, defendant Rice proffered copies of outstanding Fort Worth traffic warrants in his name, but the trial court refused to admit this evidence on the ground that the proper predicate had not been established. The trial judge noted that there was no proof that the outstanding warrants in the name of Roger William Rice were for *the* Roger William Rice who was a defendant in this case, or that the documents were authentic arrest warrants. The majority today affirms this ruling by the trial court. I dissent from this decision because I believe that the trial court abused its discretion in not admitting the proffered evidence. Moreover, the error committed cannot be characterized as harmless, since the jury may have based its decision that Rice knew that money in his possession was counterfeit on the erroneous conclusion that Rice had no other reason to give the police a false name. Hence, I believe that the refusal to admit the proffered evidence mandates reversal.

Defendant Rice presented evidence that the outstanding warrants were for a man of the same name, address and birth date as his own. *See Record* at 200–05, 254–58. Moreover, a Secret Service Agent with handwriting training—albeit not a handwriting "expert"—testified that the signature on the traffic citations attached to the arrest warrants and defendant Rice's signature on the appearance bond in the case at

bar appeared to be written by the same person. *See id.* at 201–04, 221–27, 255–56. I am at a loss as to what more defendant Rice could have done to prove that the outstanding warrants were for *his* arrest. *See, e. g.,* Fed.R.Evidence 901(b) (permissible means of authentication include "Testimony of witness with knowledge," "Comparison by the trier of fact," "Distinctive characteristics," *etc.*). In addition, the Administrator of the Municipal Court of Forth Worth, Texas certified in writing and under seal that the outstanding arrest warrants were "true and correct copies of . . . official records." *See* Defendant's Exhibit A–1. Hence, it was clear that the documents were authentic. *See* Fed.R.Evidence 901(b)(7) (evidence that a public record or report "is from the public office where items of this nature are kept" is a proper means of authentication). I am therefore bewildered by the majority's conclusion in the case at bar that "[t]he exhibits were not identified or authenticated in any way." *See* Majority Opinion, *supra* p. 528.

Moreover, the outstanding warrants for defendant Rice's arrest were indeed relevant to the case at bar since they offered an explanation for his false self-identification which does not suggest that he had knowledge of the bogus nature of the currency in his possession. Absent such an explanation, the jury may well have concluded that Rice's only reason for providing the police with a false name was his knowledge that money in his possession was counterfeit. However, if the proffered warrants had been admitted into evidence, the jury could have concluded that Rice gave a false name in an effort to avoid being linked with the outstanding arrest warrants. Hence, the refusal to admit this evidence was most certainly harmful error and an abuse of discretion. Indeed, it is beyond argument that defendant Rice could have legitimately been arrested based upon what the majority finds to be the inconclusive information in the arrest warrants. If the warrants are sufficient to deny an individual his freedom, then certainly they are sufficient to be admitted into evidence in an effort to show that the individual had a reason to give police a false name. A sufficient predicate was established, and I would hold that the trial court abused its discretion in refusing to admit the proffered evidence.

### III. *ILLEGAL ARREST AND SEARCH*

Because I would reverse and render judgment for defendants based on insufficient evidence, I need not reach the procedural questions whether defendant Williford's arrest was constitutional and whether the subsequent search was therefore valid as a search incident to arrest. However, I cannot let the majority's analysis on this point pass without comment. It seems clear to me that the police did not have probable cause to arrest defendant Williford, and that the evidence seized in the search incident to arrest should therefore have been excluded. In concluding otherwise, the majority again commits an error of constitutional proportions and does an injustice to the facts of this case.

At the time of defendant Williford's arrest—indeed up until the time Williford was handcuffed—the only evidence the police had of his participation in the counterfeiting offense was that he was present in the store when the bogus bill was passed, that he appeared to be accompanying the person who spent the bill, and that he was somewhat evasive when asked by police to identify himself. A person's "mere propinquity to others independently suspected of criminal activity" does not give rise to probable cause to search the person, *see Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), or to arrest him, *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Moreover, this "mere propinquity" should not be transformed into probable cause simply because the defendant was evasive when asked to identify himself. As noted above, in a pressure-filled situation such as a confrontation with police, both guilty and innocent individuals may be evasive concerning self-identification. *See supra* p. 531. The fact that Williford was with Rice when Rice passed an allegedly counterfeit bill combined with the fact that he was somewhat evasive

when asked his name by the police is simply insufficient to establish probable cause to arrest.[6]

The majority's attempt to distinguish *United States v. Barber*, 557 F.2d 628 (8th Cir. 1977) is unconvincing. In *Barber*, the defendant was the driver of a car which was stopped in front of a liquor store while a passenger got out and went into the store to make a purchase. The passenger—whom the defendant could clearly see through the store window—tried to buy liquor with a counterfeit bill. Secret Service agents who happened to be in the store arrested both the passenger and the defendant, and after the arrest it was discovered that the defendant had in his possession an envelope containing counterfeit money. The Eighth Circuit reversed the defendant's conviction because there was no probable cause for his arrest. In the case at bar, the majority seeks to distinguish *Barber* by noting that "[u]nlike *Barber*, Williford took independent actions which led the officer to believe that he might be involved or at least had some knowledge of Rice's illegal activity." Majority Opinion, *supra* p. 525. However, in *Barber*, the defendant made threatening gestures toward the police officers, and this would seem to be a far better indication that the defendant was involved in the illegal activity than defendant Williford's evasiveness in the case at bar. While it is true that the *Barber* decision was also based on the conclusion that the arrest had already taken place at the time the threatening gestures were made, the court made it clear that the defendant's "behavior, by itself, is hardly sufficient to support an arrest for counterfeiting." *Barber, supra*, 557 F.2d at 631. The analysis in *Barber* therefore mandates reversal in the case at bar.

Because I believe that the arresting officer did not have probable cause to arrest defendant Williford, I would find both the arrest and search incident to arrest to be invalid. Hence, I do not join the majority in sanctioning what I believe to be a clear constitutional violation.

## IV.  CONCLUSION

The majority claims that "It All Adds Up," but whether one uses the U. S. Customary System, the British Imperial System or the Metric System of weights and measures, the bottom line which my brethren have computed is erroneous. In fact, what should have been simple exercises in adding pieces of evidence have been transformed by the majority into somewhat more complex efforts of multiplication and subtraction. With regard to sufficiency of the evidence and probable cause to arrest defendant Williford, the majority has somehow multiplied the evidence and has found two sufficient products instead of two insufficient sums. With regard to the trial court's refusal to admit evidence of defendant Rice's arrest warrants, the majority has subtracted the sufficient predicate established for the admission of such evidence and has used the remainder to sanction the trial court's action. Because I believe that there was insufficient evidence to convict defendants, because I believe that the trial court abused its discretion in refusing to admit evidence of outstanding warrants for defendant Rice's arrest, and because I believe that the arresting officer did not have probable cause to arrest defendant Williford, I dissent.

6.  The majority tries to make the evidence supporting probable cause seem more substantial by noting that "Williford's action in seeking to (i) hide his true identity, (ii) evade giving even his last name, and (iii) avoid giving identification until the officer spotted his wallet, when combined with the other factors, establish the officer had probable cause to arrest him." Majority Opinion, *supra* p. 525. However, each of the three factors enumerated in the quoted passage simply refers to the fact that Williford was somewhat evasive when first asked his name by the police. The "other factors" are presumably the police officer's knowledge that Williford was with Rice when Rice allegedly passed the counterfeit bill. As the majority opinion notes, when the arrest was made, the police officer had already been informed that the counterfeit money had been spent by Rice and not by Williford. *See id.* at 524. Hence, the only information the arresting officer had concerning defendant Williford—other than Williford's evasiveness when asked to identify himself—was that Williford was with Rice when the latter allegedly spent counterfeit money.