**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Angelia Augusta BRADLEY,
Defendant–Appellant.**

**No. 90–1405
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1991.

Gerhard Kleinschmidt (court-appointed), Fort Worth, Tex., for defendant-appellant.

J. Michael Worley, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before POLITZ, DAVIS, and BARKSDALE, Circuit Judges.

POLITZ, Circuit Judge:

Convicted on a conditional guilty plea, Fed.R.Crim.P. 11(a)(2), Angelia Augusta Bradley appeals her conviction of possession of approximately 200 grams of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), contending that the court erred by denying her motion to suppress. Finding neither clearly erroneous finding of fact nor error of law, we affirm.

*Background*

Bradley, a 24–year–old black female, then eight months pregnant, deplaned at DFW International Airport after a direct flight from Los Angeles. She was dressed in maternity pants, a T-shirt which reached to her knees, and a heavy denim jacket. She carried a purse and one carry-on bag. She stopped at a ticket counter to inquire about the gate for a connecting flight to Texarkana. Bradley was ticketed on a roundtrip from Los Angeles to Texarkana, with a return three days later.

Two male Drug Enforcement Administration task force officers routinely observed passengers deplaning from

"source" cities such as Los Angeles. To the officers it appeared that Bradley stopped and looked around more than the usual harried passenger in the large, and sometimes confusing, multiple DFW terminals. The officers identified themselves. Bradley agreed to speak with them and permitted their examination of her ticket. The cash ticket was in the name of Latrice Jackson. The officers requested identification. Bradley bent over to look through her purse, which she had placed on a chair, but then responded that she had no identification. As Bradley leaned over, both officers noticed a bulge in the front of her pants not caused by her late-term pregnancy.

A nearby female agent was summoned and Bradley was asked to submit to a search to disclose the source of the bulge. Bradley testified that she informed the officers that she needed to go into the restroom. The officers testified that Bradley agreed to the search but wanted it done in the privacy of the restroom.

Bradley and the female agent entered the restroom. Bradley stepped quickly into a stall and the door swung shut. The agent pushed open the unlocked door and found Bradley attempting to flush down the toilet the contents of a tape-wrapped package which had caused the suspicious bulge. The agent grabbed the package and placed Bradley under arrest.

Bradley moved to suppress the contents of the package, characterizing the entire incident as an unlawful search and seizure. The district court conducted an extensive suppression hearing and concluded that the stop was permissible and that the conduct leading up to Bradley's arrest did not violate the fourth amendment. Bradley entered a conditional guilty plea, was sentenced to prison for 121 months plus five years supervised release, and this appeal followed.

*Analysis*

On appeal Bradley maintains that the cocaine seizure violated the warrantless search provisions of the fourth amendment, maintaining that the DEA agents had an insufficient basis for the initial stop and subsequent nonconsenual search.

The findings of fact by the trial court make Bradley's burden on appeal weighty. As we have noted:

In reviewing the district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. We must also view the evidence in the light most favorable to the party that prevailed below.

*United States v. Simmons,* 918 F.2d 476, 479 (5th Cir.1990) (citing *United States v. Muniz–Melchor,* 894 F.2d 1430 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990); *United States v. Reed,* 882 F.2d 147 (5th Cir.1989); *United States v. Lanford,* 838 F.2d 1351 (5th Cir. 1988)). We accept as correct, absent conclusive evidence to the contrary, the trial court's findings that there was no basis to detain Bradley until the agents saw the bulge, and, further, that she was not held against her will until arrested in the restroom.

■ In our seminal airport-stop case, *United States v. Berry,* 670 F.2d 583 (5th Cir.1982) (*en banc*), we detailed the three levels of police-citizen intercourse: (1) mere communication involving neither coercion nor detention; (2) brief seizures[1] of the person which require reasonable suspicion; and (3) full-scale arrests which require probable cause. Only the second and third levels implicate the fourth amendment. In *Berry* we held that "an airport stop becomes so intrusive that we must hold it to be a seizure ... if in view of all the circumstances surrounding the incident, a reason-

---

1. *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889, 905 n. 16 (1968) ("Obviously not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

able person would have believed that he was not free to leave." *Id.* at 595 (citation omitted).

Applied to the facts as determined by the trial judge, a reasonable person in Bradley's position would have believed herself free to leave at any point until the police officers noticed the unusual bulge in her pants. This finding is consistent with our jurisprudence in the burgeoning field of airport stops. *E.g., Simmons*, 918 F.2d at 480 ("one's self-identification as a law enforcement officer is not so coercive that this statement alone renders an encounter between citizen and police a seizure"); *United States v. Elmore*, 595 F.2d 1036 (5th Cir.1979) (seizure occurred only when agents took suspect's airline ticket from him for more than a minimal amount of time), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).

█ The district court concluded that upon discovery of the bulge and the lack of identification, the officers had a reasonable basis for suspecting that Bradley was engaged in illegal activity. We agree. The issue of reasonable suspicion is determined by objectively examining the totality of the circumstances. *Simmons*, 918 F.2d at 481. "Reasonable suspicion must be supported by specific and articulable facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that the intrusion was appropriate." *Id.* (citing *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879–80, 20 L.Ed.2d at 905–06). We also agree with the trial court's ruling that Bradley's race, age, itinerary, and cash-paid ticket (with short round-trip as opposed to open return), alone were not grounds to base a reasonable suspicion that she was anything other than an innocent traveler. Indeed, even her hurried, watchful movement through the airport reasonably suggested nothing more than an uncertain and worried traveler late for a connection. Discovery of the bulge and the simultaneous lack of personal identification, however, in light of all the other considerations, provided sufficient grounds for the officers' suspicions.

Within the guidelines of *Berry* and its progeny, the agents had authority to detain Bradley to determine the cause of the suspicious bulge. Bradley testified that she thereafter went into the restroom voluntarily. Whether that action was voluntary or not proves to be irrelevant. When Bradley attempted to flush the contraband down the toilet the agent accompanying her prevented this and placed her under arrest. The agent had probable cause to so act. We perceive no fourth amendment violation.

The conviction is AFFIRMED.