**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas J. HARLAN, Defendant–Appellant.**

**No. 93–3819.**

United States Court of Appeals, Fifth Circuit.

Sept. 30, 1994.

---

Ralph Capitelli, Stephen D. London, Sharon Capitelli & Wicker, New Orleans, for appellant.

Robert J. Boitmann, U.S. Atty., New Orleans, for appellee.

Before KING and BENAVIDES, Circuit Judges, and LAKE,* District Judge.

LAKE, District Judge:

Thomas Harlan appeals from a judgment of conviction and sentence for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Harlan argues that the district court erred in denying his motion to suppress evidence and in denying his request for a two-level reduction in his offense level under the sentencing guidelines for acceptance of responsibility. We AFFIRM.

* District Judge of the Southern District of Texas, sitting by designation.

### I. *The Motion to Suppress*

On November 1, 1991, Harlan traveled to New Orleans on a flight from San Antonio, Texas. (R., Vol. II at 6) While changing airplanes in Dallas, Harlan appeared very nervous and attracted the attention of a narcotics agent, Jim Hughes. Hughes discovered that Harlan had paid cash for his airline ticket and had not checked any luggage. Hughes ran a government computer check on Harlan and learned that Harlan had been investigated previously for distribution of cocaine. Hughes notified Sergeant Glenn Davis of the Jefferson Parish Sheriff's office in New Orleans of his suspicions regarding Harlan and gave Davis a description of Harlan. *Id.* Davis and another officer, Sergeant Simone, who was in plain clothes, waited for Harlan's flight to land. After Harlan left the plane in New Orleans he walked quickly down the concourse and through the lobby to a Jeep Cherokee that was waiting outside. He appeared nervous and looked over his shoulder as if he was looking to see if he was being followed. The Cherokee was being driven by Harlan's fiancee, Denise Bartholomew. *Id.* at 47. She started the engine before Harlan got to the vehicle. Simone approached Harlan, identified himself, and asked Harlan if he would answer some questions. Harlan agreed and Simone asked Harlan where his flight had originated, inspected his ticket, and returned it to him. *Id.* at 8–10. Harlan testified that both officers approached him simultaneously, began questioning him, asked to see his used airline ticket and driver's license, and kept his documents throughout the encounter with him. *Id.* at 59–60.

The officers then asked to search Harlan's garment bag, and Harlan consented to the search. *Id.* at 10, 58. Simone found a used airline ticket and over $8,000 cash in the bag. *Id.* at 11, 25. Davis testified that the ticket indicated that Harlan had been on a two-day trip even though Harlan had previously told the officers that he had been on a three- or four-day trip. *Id.* at 10–11. When the officers questioned Harlan about the large amount of cash found in his bag Harlan told them that he had brought some of the money with him on the trip and that some of it

represented earnings on a business venture involving the sale of horses. *Id.* at 11. Harlan became increasingly nervous and stated that some of this money could be considered illegal. *Id.* at 11–12, 35.

During the curbside encounter the officers noticed a large bulge in the jacket that Harlan was wearing and asked to search it. Harlan declined their request and stated that he preferred that the officers obtain a search warrant. *Id.* at 12. Harlan denied making this statement. *Id.* at 58. Harlan was then escorted to an office at the airport to wait while the officers obtained a search warrant. *Id.* at 13, 59. During the two-hour period while he waited at the office Harlan was constantly observed and was refused permission to go to the restroom. *Id.* at 42. After the officers obtained a search warrant they searched Harlan's jacket and discovered two clear plastic bags of cocaine. *Id.* at 38. Harlan was indicted for possession with intent to distribute cocaine.

■ The district court held that the officers' initial curbside encounter with Harlan was a *"Terry*-type stop" based upon reasonable suspicion and that probable cause to seize Harlan existed after the officers discovered the cash in Harlan's garment bag and saw the bulge in his jacket. (June 4, 1993, Order and Reasons, 822 F.Supp. 1247, 1250–51) In reviewing the district court's rulings, which were based "upon testimony at a suppression hearing," the court " 'must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law.' " *United States v. Thomas,* 12 F.3d 1350, 1366 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994) (quoting *United States v. Garcia,* 849 F.2d 917, 917 n. 1 (5th Cir.1988)). The court " 'must view the evidence in the light most favorable to the party that prevailed below.' " *Id.* The district court's ultimate legal conclusion that the police officers had probable cause to seize Harlan is reviewed *de novo. Thomas,* 12 F.3d at 1366. The encounter between Harlan and the police at the New Orleans airport may fall within three categories under our Fourth Amendment analysis:

(1) mere communication involving neither coercion nor detention [which does not implicate the Fourth Amendment];

(2) brief seizures of the person, which require reasonable suspicion; and

(3) full-scale arrests, which require probable cause.

*United States v. Bradley,* 923 F.2d 362, 364 (5th Cir.1991) (citing *United States v. Berry,* 670 F.2d 583, 591 (5th Cir.1982) (en banc)).

Harlan argues that the district court erred in denying his motion to suppress the cocaine found in his jacket because it was discovered after he had been seized without probable cause in violation of the Fourth Amendment. According to Harlan the improper seizure occurred either (1) when his used airplane ticket and driver's license were confiscated while he was being questioned outside his fiancee's Cherokee or (2) when he was escorted to an office at the airport and forced to wait for over two hours while the police officers obtained a warrant to search his jacket. We are not persuaded by either argument.

The district court rejected Harlan's argument that his airline ticket and driver's license were confiscated at the Cherokee. After hearing the testimony of Davis, Simone, Harlan, and Bartholomew, the court found that Harlan's account of the events was not "plausible" and that the initial stages of the encounter were voluntary. (June 4, 1993, Order and Reasons, 822 F.Supp. at 1251) This finding is not clearly erroneous since it is supported by the record, and in particular, by Davis' testimony that Simone returned Harlan's ticket and driver's license after examining them. (R., Vol. II at 9–10)

█ Harlan's argument that he was unconstitutionally seized a few minutes later when he was forced to accompany the officers to an airport office and wait two hours while the officers obtained a warrant fails because by this time the officers had probable cause to arrest him. "Probable cause exists where the facts and circumstances within the arresting officers' knowledge are sufficient in themselves to warrant a [person] of reasonable caution in the belief that the person to be arrested has committed or is committing an offense." *United States v. Mendez,* 27 F.3d 126, 129 (5th Cir.1994) (citing *United States v. Orozco,* 982 F.2d 152, 154 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2430, 124 L.Ed.2d 650 (1993)).

The evidence before the district court showed that:

(1) Harlan was traveling without checked luggage on a one-way ticket purchased with cash,

(2) he acted nervously in both the Dallas and New Orleans airports,

(3) he was listed in the government's computer database as previously having been suspected of being involved in cocaine trafficking,

(4) he gave the officers misleading information about the duration of his visit to San Antonio,

(5) he was carrying over $8,000 cash in his garment bag,

(6) he stated that some of this money could be considered illegal, and

(7) he had a clearly visible large bulge in the jacket he was wearing.

While none of these factors alone would be sufficient to create probable cause, the "laminated total" of the evidence is more than sufficient to support the district court's finding that there was probable cause to seize Harlan when he was required to accompany the officers to the airport office. *See United States v. Edwards,* 577 F.2d 883, 885 (5th Cir.) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978) ("We must also be mindful that probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers. We weigh not individual layers but the laminated total.... Viewing the evidence in this manner (in its totality) it may truly be said that the total may be a sum greater than its parts.") (citations and internal quotations omitted).

## II. *The Alford Plea and Sentencing*

█ Following the denial of his motion to suppress Harlan entered a conditional, equiv-

ocal plea of guilt.[1] At sentencing Harlan argued that he was entitled to a reduction in his offense level under the sentencing guidelines for acceptance of responsibility. However, during the presentence investigation and at his sentencing Harlan refused to acknowledge that he possessed cocaine with intent to distribute it, which is an essential element of § 841(a).[2] Harlan asserted that he possessed the 263.5 grams of cocaine with over 94% purity for his personal use, even though he told the probation officer that he had not had a drug problem for the past two years. The district court was skeptical of Harlan's position (R., Vol. III, at 7) and concluded that he was not entitled to a two-level reduction under § 3E1.1 of the sentencing guidelines [3] for acceptance of responsibility. (R., Vol. III, at 32–33) In explaining his reasons for this decision the court stated:

[B]ecause the defendant has persisted in what the Court continues to believe to be a weak story, that he did not intend to distribute the drugs in question and claims merely that they were for his personal use while denying that he used drugs for the last several years, his objections to paragraphs 7 and 16 [of the Presentence Investigation Report (PSR)] are also denied.[4] Moreover, the court should point out that

the defendant's *nolo* plea is not, in the Court's mind, an acknowledgment of guilt nor can it be taken as an acceptance of responsibility as argued by counsel.

*Id.* The court found that Harlan's total offense level was 20, his criminal history category was 1, and his sentencing guideline range was 33 to 41 months in prison. The court sentenced Harlan to 41 months in prison and fined him $15,000. *Id.* at 34.[5]

The "[c]ourt reviews a district court's finding on acceptance of responsibility for clear error but under a standard of review even more deferential than a pure 'clearly erroneous' standard." *United States v. Gonzales,* 19 F.3d 982, 983 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 229, —— L.Ed.2d —— (1994) (quoting *United States v. Tello,* 9 F.3d 1119, 1122 (5th Cir.1993)). "Appellate review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable." *Gonzales,* 19 F.3d at 983 (citation omitted). "Application of the guidelines is a question of law subject to *de novo* review." *Id.* Under the sentencing guidelines a dis-

1. In their briefs both Harlan and the government refer to the plea as an *"Alford"* plea, an equivocal plea named for Henry C. Alford, whose plea was upheld by the Supreme Court in *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A defendant entering an *Alford* plea pleads guilty but affirmatively protests his factual innocence to the charged offense. *See Alford,* 400 U.S. at 31, 91 S.Ct. at 65. The court minutes from Harlan's rearraignment also state that Harlan entered an *Alford* plea. However, the judgment refers to the plea as a *"nolo"* plea and the district court used the terms *"nolo"* and *"Alford"* at sentencing. Although an *Alford* plea and a plea of nolo contendere are not technically synonymous, resolution of this apparent discrepancy is not necessary to the outcome of this appeal, and the court assumes, as do the parties, that Harlan entered an *Alford* plea.

2. *See, e.g., United States v. Olivier–Bercerril,* 861 F.2d 424, 426 (5th Cir.1988) ("Three elements must be proven to sustain a conviction for the crime of possession of cocaine with intent to distribute: (1) the knowing (2) possession of cocaine (3) with intent to distribute it.") (citation omitted).

3. All citations are to the 1993 guidelines manual in effect when Harlan was sentenced on November 17, 1993. *See United States v. Ainsworth,* 932 F.2d 358, 362 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 346, 116 L.Ed.2d 286 (1991).

4. Paragraphs 7 and 16 of the PSR address Harlan's possible adjustment for acceptance of responsibility. In ¶ 16 the probation officer recommended that Harlan receive no reduction for acceptance of responsibility because he "denies an essential element of the offense by claiming that the cocaine was for his personal use and not possessed with intent to distribute."

5. The district court elaborated on its disbelief of Harlan's story when discussing the appropriate sentence. "There are several disturbing things about this case. The amount of drugs is very large, 263.5 grams. The defendant's only explanation to square that with his personal use story is that he wanted to avoid the inconvenience of going back and forth to buy more drugs. I find that to be somewhat cavalier, particularly in light of the fact that when the defendant was arrested he was carrying $8,300 in cash. I find that to be highly unnatural." *Id.* at 34.

trict court may decrease a defendant's offense level by two levels if it finds that "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. "A defendant bears the burden of proving to the district court that he is entitled to the downward adjustment." *United States v. Kinder,* 946 F.2d 362, 367 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992) (citations omitted).

■ Harlan argues that the district court's decision was based on its erroneous conclusion that an *Alford* plea precludes a finding of acceptance of responsibility. As support for this argument Harlan relies on two statements made by the court. During the sentencing hearing the court stated "[a]n *Alford* plea doesn't, in my opinion, constitute legal acceptance of responsibility. All an *Alford* plea does is say 'I'm not guilty, but the evidence of my guilt is overwhelming, and I choose not to fight the case.'" (R., Vol. III, at 11) Later in the hearing the court reiterated that Harlan's "nolo plea is not, in the court's mind, an acknowledgment of guilt nor can it be taken as an acceptance of responsibility as argued by counsel." *Id.* at 33. The court made these statements in response to Harlan's counsel's argument that the entering of the *Alford* plea itself legally established acceptance of responsibility.[6]

We do not view the court's statements as indicative of the court's belief that an *Alford* plea automatically barred acceptance of responsibility. The court's statements accurately reflect that entering a plea (even an unequivocal guilty plea) does not automatically constitute acceptance of responsibility. *See* U.S.S.G. § 3E1.1, Application Note 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). When read in conjunction with the court's reasons for declining to find that Harlan had accepted responsibility the two statements cited by Harlan reflect the court's conclusion that Harlan had not shown his entitlement to a reduction for acceptance of responsibility. Simply put, the court did not believe Harlan's "weak story" and therefore did not find that he had demonstrated acceptance of responsibility.

■ Furthermore, we are not persuaded that the district court erred in concluding that Harlan was not entitled to a reduction for acceptance of responsibility even if the court did rely in part upon the fact that Harlan entered an *Alford* plea. Although this court has not addressed the issue the Seventh and Eleventh Circuits have concluded that whether a defendant has entered an *Alford* plea in which he maintains his innocence and refuses to acknowledge his conduct in the offense is a relevant factor in the acceptance of responsibility determination. *See, e.g., United States v. Holt,* 985 F.2d 563 (7th Cir.1993) (Table) (reported in full, 1993 WL 13331, *3, 1993 U.S.App. LEXIS 1425 at *7–*8 (7th Cir. Jan. 22, 1993)); *United States v. Rodriguez,* 905 F.2d 372, 374 (11th Cir. 1990). *See also United States v. Burns,* 925 F.2d 18, 20 (1st Cir.1991) (upholding district court's refusal to find acceptance of responsibility where the district court made a reference to the defendant's *Alford* plea but also relied on other factors in its decision). This approach makes eminent sense. A defendant is only entitled to a reduction in his offense level for acceptance of responsibility if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A defendant's refusal to acknowledge essential elements of an offense is incongruous with the guideline's commentary that truthful admission of the conduct comprising an offense is relevant in determining whether a defendant qualifies for this reduction. U.S.S.G. § 3E1.1, Application Notes 1(a) and 3. We hold that a district court may consider whether a defendant has entered an *Alford* plea as a relevant factor when deciding whether to afford a defendant a reduction in offense level for acceptance of responsibility.

### III. *Conclusion*

■ The district court did not err in its refusal to grant Harlan's motion to suppress because the facts show that the initial stages

---

6. Harlan's counsel stated "Your Honor when we pled, we pled in the *Alford* plea, which was obviously acceptable to the Court and legally acceptable. I thought we established legal acceptance of responsibility. It would have been easy for Mr. Harlan because—." (R., Vol. III, at 11)

of his encounter with the officers were voluntary and because probable cause existed to arrest him when he was escorted to the airport office. The district court did not err in its refusal to grant Harlan's request for a two-level reduction for acceptance of responsibility under the sentencing guidelines. The court's decision was based upon Harlan's persistent, and unpersuasive, explanation that he possessed the cocaine not for distribution but for his personal use. Even assuming that the district court relied in part upon Harlan's *Alford* plea [7] that reliance was not error. The district court's judgment is AFFIRMED.

---

7. Because the propriety of *Alford* pleas is not before us, this opinion should not be read as an endorsement of them. As the court has previously stated, "[a]lthough excellent reasons exist for permitting an *Alford* plea, the logic underlying this type of plea is counter-intuitive." *United States v. Punch,* 709 F.2d 889, 895 (5th Cir. 1983). Defendants who enter such pleas often challenge the voluntariness and/or factual bases for their pleas on direct appeal or on habeas corpus review. *See, e.g., Punch,* 709 F.2d at 891, 897 (defendant argued on appeal that he made an *Alford* plea because his will to go to trial had been "overborne by that of his counsel"); *Willett v. State of Georgia,* 608 F.2d 538, 540 (5th Cir. 1979) (defendant who entered *Alford* plea challenged the existence of a factual basis for the plea); *Matthews v. United States,* 569 F.2d 941, 943 (5th Cir.), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978) (defendant argued that his *Alford* plea was a result of a threat by the prosecutor and a post-conviction eviden-

tiary hearing was required to resolve this issue). *See also,* Curtis J. Shipley, *Note, The Alford Plea: A Necessary but Unpredictable Tool for the Criminal Defendant,* 72 Iowa L.Rev. 1063, 1076 (1987) (stating that some judges disfavor *Alford* pleas because of their perception of the "inevitable collateral attacks on the validity of the pleas"). It is within the discretion of the district court to accept an *Alford* plea only after establishing a sufficient factual basis for the plea, *see Willett,* 608 F.2d at 540, or to refuse to accept an *Alford* plea. The *Alford* Court itself observed that "[o]ur holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead.". 400 U.S. at 38 n. 11, 91 S.Ct. at 168 n. 11. *Accord, United States v. Martinez,* 486 F.2d 15, 20 (5th Cir.1973) ("The decision to accept or reject a tendered guilty plea, once the requirements of Rule 11 have been satisfied, is committed to the sound judicial discretion of the trial judge.") (citations and quotations omitted).